## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

PT (PERSERO) MERPATI NUSANTARA AIRLINES |
     **Plaintiff,** |
                                  | **Civil Case No. 1:07-cv-00717**
**v.** |
  |
**THIRDSTONE AIRCRAFT LEASING GROUP, INC.,** |
*et al.* |
  |
     **Defendants** |
  |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO COMPEL ATTENDANCE AT DEPOSITION

Plaintiff, PT (Persero) Merpati Nusantara Airlines ("Plaintiff") states the following in support of its Renewed Motion to Compel Attendance at Deposition.

On July 8, 2007, the Court entered a One Million Dollar ($1,000,000.00) default judgment ("Judgment") against Defendants Thirdstone Leasing Group, Inc. ("Thirdstone") and Alan Messner ("Messner"). On September 11, 2007 and September 26, 2007, Plaintiff, in an effort to enforce the Judgment, served Jon Cooper ("Cooper") with a subpoena *duces tecum* to appear for a deposition on September 26, 2007.[1]

The Judgment arose out of a contract between Plaintiff and Thirdstone for the lease of two aircraft. Cooper was, at all relevant times, the Chief Operating Officer of Thirdstone with control over and access to the funds at issue in the litigation. Plaintiff's Complaint alleged that Defendants misappropriated a refundable security deposit of $1.0 Million ("Security Deposit")

---

[1] On September 11, 2007 Cooper's counsel, Geoffrey T. Hervey agreed to accept service of the subpoena on behalf of Cooper solely in his individual capacity . On September 24, 2007, Mr. Hervey agreed that service of the subpoena also constituted service on Cooper in his capacity as an officer of Thirdstone.

paid by Plaintiff to Defendants for the lease of the aircraft.  Plaintiff never received either aircraft from Defendants and never received a refund of the Security Deposit.

Following entry of the Judgment, Plaintiff confirmed by means of informal discovery and by bank records obtained by subpoena that Cooper transferred the $1.0 million from his law firm's account, where it was originally deposited, to his personal account.  Plaintiff believes that Cooper does not dispute that he possessed and disposed of the $1.0 million.

Fed. R. Civ. Proc. 69(a) provides that the party seeking to enforce a judgment "may obtain discovery from *any* person, . . . in the manner provided by the rules."  Fed. R. Civ. Proc. 69(a).   Cooper is obviously a material witness regarding the missing $1.0 million and it is critical that Plaintiff to be allowed promptly to examine Cooper pursuant to Fed. R. Civ. Proc. 69(a).

Plaintiff's counsel and Cooper's counsel originally agreed on September 26, 2007 as a mutually agreeable date for Cooper's deposition.  However, when Plaintiff disclosed that it had named Cooper in a new suit, based on the newly discovered evidence of Cooper's personal involvement in the misappropriation of the deposit, Cooper's counsel advised undersigned counsel that Cooper would not appear for the September 26, 2007.  Counsel expressed concern that Cooper might be subjected to multiple depositions if required to testify in this case pursuant to Fed. R. Cir. Proc. 69(a) and also required to testify as a party in Defendant in Case No. 07-01701.  Cooper's counsel also stated that Cooper was preparing to leave the country on a pre-arranged business trip and that he would appear for a deposition upon his return in mid-November, 2007.  Cooper did not move to quash the subpoena or file for a protective order in accordance with the Federal Rules.

On September 26, 2007, Plaintiff filed an Emergency Motion to Compel Attendance at Deposition ("Motion to Compel").  On September 27, 2007, Cooper filed an Opposition of Non-Party Witness, Jon Cooper, to Plaintiff's Motion to Compel ("Opposition") as well as an Affidavit of Jon Cooper in Support of Opposition ("Affidavit").

Cooper attested that religious holidays and business trips scheduled to commence on September 29, 2007 would prevent him from participating in the September 26, 2007 deposition. Cooper also attested that he would return to the United States by mid-November 2007, at which time he would be available to be deposed.  Ex. A (Affid. 12, 13).  On September 27, 2007, this Court issued an Order denying Plaintiff's Motion to Compel.

On November 7, 2007, in reliance upon Cooper's representations as set forth in the Affidavit, Plaintiff's counsel contacted Cooper's counsel to re-schedule Cooper's deposition for a date in November.  On November 8, 2007, Cooper's counsel sent an e-mail to Plaintiff's counsel stating that Cooper would not be available for a deposition until January and that, because of the upcoming holidays and Cooper's hectic travel schedule, that January 9, 2008 or later would be an acceptable date for a deposition.  Ex. B.

Plaintiff would be severely prejudiced by a further delay of the Cooper deposition.  This is not the ordinary situation in which post-judgment collection involves merely discovering the financial assets of the judgment debtors.  Rather, enforcement of the Judgment requires the recovery of a specific $1.0 Million deposit.  Moreover, Cooper's stated concern about avoiding multiple depositions is premature.  If and when Cooper is deposed in Case No. 07-01701, his counsel will be free to make objections to any questions which he considers to be redundant of discovery obtained in the Rule 69(a) deposition.

Cooper has a duty to comply with the subpoena. Notwithstanding his travel and work schedule, for which the Court accommodated him once with its September 27, 2007 Order, Cooper should not be permitted to continue his pending deposition until after January 9, 2008. Plaintiff has demonstrated the materiality of any testimony expected to be provided by Cooper and that time is of the essence in obtaining discovery in aid of execution from Cooper. Cooper does not contend that he will be out of the country on a continuous basis until January 9, 2008. Under the circumstances, Plaintiff respectfully requests that Cooper be compelled to attend the deposition originally scheduled for September 26, 2007 on a date in November to be determined by the Court.

Respectfully Submitted,

PT (Persero) Merpati Nusantara Airlines

By Counsel

BEAN, KINNEY & KORMAN, P.C.

By: */s/ James R. Schroll*
James R. Schroll, Esq. (DC Bar #256099)
Philip M. Keating, Esq. (DC Bar #384726)
Juanita F. Ferguson, Esq. (DC Bar #471045)
2300 Wilson Boulevard, 7th Floor
Arlington, Virginia 22201
Phone: 703-525-4000
Facsimile: 703-525-2207

4

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the RENEWED MOTION TO COMPEL ATTENDANCE AT DEPOSITION was served by electronic mail this 14th day of November 2007 on:

Geoffrey T. Hervey
Bregman, Berbert, Schwartz & Gilday, LLC
7315 Wisconsin Avenue, Suite 800 West
Bethesda, MD 20814

By:  */s/ James R. Schroll*                
James R. Schroll, Esquire

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PT (PERSERO) MERPATI NUSANTARA AIRLINES,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **vs.** | : **Civil No. 1:07-cv-00717** |
| | : **RJL** |
| **THIRDSTONE AIRCRAFT LEASING GROUP, INC.,** | : |
| | : |
| **Defendants.** | : |

## AFFIDAVIT OF JON COOPER IN SUPPORT OF OPPOSITION OF NON-PARTY WITNESS, JON COOPER, TO EMERGENCY MOTION TO COMPEL ATTENDANCE AT DEPOSITION

My name is Jon C. Cooper. I am an adult citizen of the United States. I have personal knowledge of the matters contained in this Affidavit, and I am competent to testify thereto.

I offer this Affidavit in support of the Opposition of Non-Party Witness, Jon Cooper, to Emergency Motion to Compel Attendance at Deposition.

1.      I am unable to attend a deposition on September 27 or September 28 because I am involved in business meetings and related activities that I cannot reschedule or cancel related to a critical contract pursuant to which I am performing environmental consulting services on a United States Government project. I leave for Burkina Faso, in Africa, on the morning on September 29 as part of that contract. At the same time, I am engaged in securing investment funding for a project, which is currently referred to as "Pigeon Air," to provide direct airline service to Nigeria from the United States. On



September 27 and 28, I will, in addition to working on the Burkina Faso project, be meeting with investors from Nigeria. My meetings and related work cannot be rescheduled or canceled without seriously jeopardizing one or both projects and risking the loss of a significant amount of income.

2.      My primary business is providing consulting services in the environmental field. Much of my work is for government agencies, both domestic and foreign, and much of it relates to international projects.

3.      The Burkina Faso project is an emergency mission in the environmental field, which has taken dozens of hours to put together. The project is shown in the attached Work Description. The project involves the contribution of between $25 million and $75 million in aid from the United States under the Millennium Challenge Corporation ("MCC"), which is part of the State Department, to Burkina Faso in Africa, one of the poorest countries on Earth.

4.      The team has 25 members, but my role, as the "Environmental Specialist," is pivotal. This is clear in the attached Work Description, which provides, in part: "[T]he Environment Specialist has primary responsibility for answering the environmental DD questions listed in Annex 6 relating to environmental assessment." The Work Description also provides, "The Environmental Specialist must  be in Ouagadougou, Burkina Faso, ready to begin work on October 1, 2007." This is because the Environmental Specialist is part of the oversight team that reports directly the Team Leader. Under U.S. law, I am preparing  the required elements that will look at environmental aspects of the engineering and agricultural subteams.

5.      I must be in Burkina Faso to meet the entire team on Monday October 1 and give them direction. Then, on Wednesday we all head out to the field. If I arrive late, I violate my contract -- and several team members have been bounced because MCC has strong rules regarding compliance and timeliness. In addition, if I do not arrive on time, I will miss the transportation to the field, which has been specially arranged. I must be in Burkina Faso on time because my part of the project is required by U.S. law.

6.      Also as a requirement of the contract, I must finish an inception report before I leave, and that entails reviewing 200 files on the project web site and preparing a detailed report. I only have a limited time to do this because the project approvals, etc. did not allow me to start until September 26. I am working on that report when I am not meeting with business representatives.

7.      My compensation for the Burkina Faso project will be approximately $49,000. If I miss the first part of the mission, they will tell me not to go and I will lose that income. This will result in a great loss to me, and the project cannot be easily replaced. Environmental programs for me are opportunistic, and I do not expect to see another one for 3-6 months. Moreover, if the contract is extended, which is possible, the contract could be worth approximately $100,000 to me, which will be lost if I do not prepare for the trip and arrive on time.

8.      With respect to the Pigeon Air project, I had a carefully scheduled set of meetings and milestones on that project, which culminated with visits from the Nigerian investors. This has taken hundreds of hours of time to prepare the complicated spread sheets and discussion documents. They were necessary to show that this will be an operation that will be worth hundreds of millions of dollars in the next four or five years.

The investors are being asked to invest $60 million into the project, and my work entails demonstrating to them that such an investment is sound.

9.      I have staff in England, Germany and the United States working on the Pigeon Air project, and it took many, many hours of preparation work on my part.

10.      Additionally, I have been involved in a project called "Volcano," which is a waste-to-energy project that is in the final negotiations for a new factory in Pakistan and, later, in Canada. Again, these involved coordination between energy and waste specialists in the private and government sector.

11.      These activities have consumed my time to date, and, other than necessary breaks for meals and rest, I will be devoting my time to them between now and the time that I leave for Burkina Faso on the morning of Saturday, September 29. (I will also be observing Sukkoth, a Jewish holiday, on the evening of September 27, and the evening of September 28 is the beginning of the Jewish Sabbath.) I cannot reschedule or cancel any of these activities without jeopardizing one or both projects, and risking the loss of a significant amount of income.

12.      My travel schedule will take me to Burkina Faso, then probably to Lagos, Nigeria, and then to London. My return date is not certain, but I expect to be back in the United States by mid-November.

13.      I have cooperated, through my counsel, with counsel for Merpati, and I intend to continue to do so. I will appear for a deposition at a time when my appearance will not threaten my projects and my ability to earn income. I expect to be available for

that purpose beginning in mid-November, subject to Orders of Court and agreements of

counsel regarding this matter and the conduct of discovery in a case that Merpati has just

filed against me.


FURTHER AFFIANT SAYETH NAUGHT

I, JON C. COOPER, DECLARE UNDER PENALTY OF PERJURY THAT THE
FOREGOING IS TRUE AND CORRECT.


_____

Jon C. Cooper


Executed on September 27, 2007

Respectfully submitted,

                          BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC


              By:     _____/s/_____
                          Geoffrey T. Hervey, # 415907
                          7315 Wisconsin Avenue, Suite 800 West
                          Bethesda, Maryland 20814
                          301-656-2707 phone
                          301-961-6525 fax
                          ghervey@bregmanlaw.com
                          Counsel for Jon C. Cooper, Ph.D.

## Juanita F. Ferguson

**From:**    Geoffrey Hervey [GHervey@bregmanlaw.com]
**Sent:**    Thursday, November 08, 2007 6:55 PM
**To:**    Juanita F. Ferguson
**Subject:**  Deposition dates

Juanita,

I have been able to communicate with Dr. Cooper by e-mail today, and he has informed me that any date in January will work for a deposition.  Because of the holidays, I would suggest that you set it for January 9 or later.

I understand that your client would like to schedule the deposition for a date sooner than January.  As previously advised, however, Dr. Cooper has an extremely hectic travel schedule between now and the end of the year, and he will be away in Africa, and perhaps in England, on business for almost the entire time between now and the end of the year.

In January, we will make Dr. Cooper available for his deposition.  Given the fact that your new lawsuit against Dr. Cooper is not even at issue yet, I do not see how your client will be prejudiced by waiting until January for the deposition.  Moreover, we have cooperated with you to date, and we will continue to do so.  Under these circumstances, a motion to compel Dr. Cooper's attendance for a date sooner than January would appear to be unnecessary.

Please let me know what date in January you would like to set for the deposition.

Geoffrey T. Hervey
BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC
Attorneys At Law
7315 Wisconsin Avenue, Suite 800 West
Bethesda, Md. 20814
301-656-2707 telephone
301-961-6525 fax
www.bregmanlaw.com



11/14/2007